[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 498.]

THE STATE EX REL. DAVID'S CEMETERY, APPELLANT, *v*. INDUSTRIAL

COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. David's Cemetery v. Indus. Comm.*, 2001-Ohio-1271.]

*Workers' compensation—Award of temporary total disability compensation by*
*Industrial Commission not an abuse of discretion when supported by "some*
*evidence."*

(No. 00-1205—Submitted July 17, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-800.

————————————

*Per Curiam.*

{¶ 1} On June 5, 1997, appellee-claimant, Larry D. Byrge, sustained an
injury in the course of and arising from his employment with appellant David's
Cemetery. Five days later, Dr. Krisell D. Fedrizzi diagnosed an incisional ventral
hernia. In office notes of the same date, she advised claimant to "avoid any heavy
lifting and forceful pushing/pulling [until] hernia repaired." Those restrictions
were repeated in a July 18, 1997 attending physician's questionnaire ("APQ"),
which certified claimant as unable to return to any job requiring such duties from
June 10, 1997 through the "present." There is no dispute that claimant's former
position of employment entailed such duties.

{¶ 2} Pursuant to Dr. Fedrizzi's referral, claimant saw a surgeon, Dr.
Andrew H. Gabriel, on June 12, 1997. Dr. Gabriel confirmed the diagnosis and
recommended surgery. Byrge indicated that he would seek workers' compensation
approval. On June 30, 1997, Gabriel prepared a letter apparently for that purpose.
In it, he outlined his proposed surgery and advised that "once the procedure is
performed, the patient will be off work approximately six weeks."

**{¶ 3}** Claimant followed up with an application for a workers' compensation allowance. After several delays, it was finally heard by a district hearing officer ("DHO") for appellee Industrial Commission of Ohio. In an order dated April 7, 1998, the DHO denied the claim as unrelated to employment. In so doing, the DHO cited Gabriel's report as well as affidavits from two co-workers—Stephen Hopkins and William Hendricks—Hopkins claiming that four days after the alleged injury occurred, claimant voluntarily quit.

**{¶ 4}** Claimant's appeal was heard by a staff hearing officer ("SHO") on May 11, 1998. The SHO vacated the DHO's order and allowed the claim for "incisional ventral hernia." Temporary total disability compensation ("TTC") was ordered from June 10, 1997 through July 18, 1997, based on the reports of Fedrizzi and Gabriel, and was to continue upon submission of medical proof. This order was not appealed.

**{¶ 5}** A June 18, 1998 letter from Gabriel to Fedrizzi indicated that claimant's surgery had been approved and was scheduled for July 8, 1998. The letter also indicated that claimant now also suffered from a left inguinal hernia. There was no allegation that this latest condition was work-related.

**{¶ 6}** On June 30, 1998, Fedrizzi completed a C-84 questionnaire that was to be submitted with the claimant's request for further TTC. This form indicated that claimant had been/would be unable to return to his former position of employment from June 5, 1997, pending surgery. The diagnoses originally listed were incisional ventral hernia and left inguinal hernia. The latter, however, was then crossed out and initialed by the doctor.

**{¶ 7}** Gabriel ultimately decided to repair the hernias in separate procedures. He successfully repaired the ventral hernia on July 8, 1998, and scheduled the remaining operation for August 14, 1998.

**{¶ 8}** On September 18, 1998, David's Cemetery moved for a "retroactive termination of temporary total disability benefits." In support, it submitted

Fedrizzi's C-84, statements indicating that claimant voluntarily quit, and evidence of other employment.

{¶ 9} A DHO heard the matter on January 15, 1999. The DHO broke the disputed period—June 10, 1997 through September 27, 1998—into five parts. TTC from June 10, 1997 through July 18, 1997, was upheld on the basis of *res judicata*. TTC from July 19, 1997 through December 20, 1997, was sustained based on "the office notes of Dr. Fedrizzi." The DHO declared overpaid, compensation from December 21, 1997 through July 7, 1998, because claimant, by his own admission, worked intermittently over that time. TTC for the period following surgery for the allowed ventral hernia—July 8, 1998 through August 14, 1998—was left intact. Finally, TTC from August 15, 1998 through September 27, 1998—the recovery period for claimant's nonallowed inguinal hernia—was found to have been overpaid.

{¶ 10} The DHO's order, along with his accompanying reasoning, was affirmed by an SHO on March 30, 1999. The evidence cited in support included "the medical reports of Dr. Fedrizzi." Further appeal was refused.

{¶ 11} David's Cemetery commenced an action in mandamus before the Court of Appeals for Franklin County, alleging that the commission abused its discretion in awarding TTC. The court of appeals upheld the commission's order and denied the writ. This cause is now before this court upon an appeal as of right.

{¶ 12} Three periods of TTC are at issue: (1) June 10, 1997 through July 18, 1997; (2) July 19, 1997 through December 20, 1997; and (3) July 8, 1998 through August 14, 1998. Upon review, we affirm the judgment of the court of appeals as to each.

{¶ 13} David's Cemetery contests the commission's conclusion that the compensation awarded over the first period was *res judicata*. Citing Fedrizzi's June 30, 1998 C-84, David's Cemetery contends that the reference to a nonallowed inguinal hernia coupled with a certification of disability post-dated to the date of

injury suggests that the nonallowed condition contributed to claimant's alleged temporary total disability from the claim's inception. This, per David's Cemetery, constitutes a new and changed circumstance sufficient to warrant reopening the matter under the commission's R.C. 4123.52 continuing jurisdiction.

{¶ 14} David's Cemetery is correct in naming new and changed circumstances as a factor sufficient to invoke continuing jurisdiction. *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383. We do not concur, however, with its assertion that Fedrizzi's C-84 compelled that result. The commission is the sole evaluator of evidentiary weight and credibility. *State ex rel. Burley v. Coil Packing, Inc*. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. None of the evidence prepared contemporaneously with claimant's injury or first period of disability (June 10, 1997 through July 18, 1997) mentioned the nonallowed inguinal hernia. To the contrary, the first reference was in Gabriel's June 18, 1998 letter—approximately a year later. This letter contained no allegation that the nonallowed condition was related to claimant's industrial injury. Viewing all of the evidence in totality, we cannot state that the commission abused its discretion in refusing to reopen the issue of causal relationship between disability and a nonallowed condition.

{¶ 15} We are also unpersuaded that evidence of other employment or of voluntary departure warranted the exercise of continuing jurisdiction. The latter was simply evidence supplementing statements originally considered at the April 7, 1998 DHO hearing. Likewise, evidence of other employment did not merit reconsideration, since claimant was not working over the TTC period declared *res judicata* by the commission. Accordingly, we sustain the finding of *res judicata*.

{¶ 16} David's Cemetery next asserts that the remaining disputed periods of TTC are unsupported by "some evidence." We again disagree. David's Cemetery engages in a semantics debate as to whether the DHO's reference to Fedrizzi's "office notes" and the SHO's reliance on Fedrizzi's "medical reports"

4

denote reliance on the same medical evidence. We find it unnecessary to engage in such a discussion, since both notes and reports from Fedrizzi support TTC from July 17, 1997 through December 20, 1997. Her June 10, 1997 office entry instructs claimant to refrain from heavy lifting and forceful pushing/pulling until the allowed ventral hernia was fixed. Her August 18, 1998 report confirmed that these were indeed her restrictions over the relevant time period. Because David's Cemetery has not alleged that claimant's former position of employment was free from such physical duties, we hold these documents to be "some evidence" supporting TTC over this period.

{¶ 17} In attacking the final period of TTC at issue—July 8, 1998 through August 14, 1998—David's Cemetery again asserts a lack of "some evidence" in support. David's Cemetery notes that the SHO based her award "upon medical evidence finding claimant to be unable to return to his former position of employment due to the allowed conditions in this claim," without identifying to which evidence she was referring. David's Cemetery also notes that elsewhere in the order, the SHO lists reliance on Fedrizzi. We agree that this ambiguity is confusing but do not agree that, under these facts, it compels vacation of the commission's order. Ambiguous commission orders are generally returned for clarification. See, *e.g., State ex rel. Kirschner v. Indus. Comm.* (1998), 82 Ohio St.3d 90, 694 N.E.2d 460; *State ex rel. Hall v. Marion Dresser Indus., Inc.* (1997), 79 Ohio St.3d 540, 684 N.E.2d 70; *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.* (1997), 79 Ohio St.3d 73, 679 N.E.2d 702; *State ex rel. Buchanan v. Indus. Comm*. (1988), 40 Ohio St.3d 168, 532 N.E.2d 743; *State ex rel. Mitchell v. Robbins & Myers, Inc*. (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721. In this case, however, a return for clarification of the evidence relied upon is, to us, unnecessary, since *all* of the medical evidence—including that of Dr. Steven S. Wunder, who examined claimant on David's Cemetery's behalf—articulates an approximately six-week, post-operative recovery period. See *State ex rel. Jackman*

*v. Indus. Comm.* (1995), 72 Ohio St.3d 397, 650 N.E.2d 467; *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666.  Accordingly, we find no abuse of discretion in the award of TTC from July 8, 1998, the date of surgery, through August 14, 1998.

{¶ 18} David's Cemetery issues a last broad challenge to TTC eligibility based on claimant's employment status at various times during the disputed periods.  Its first argument focuses on the fact that claimant quit his job at David's Cemetery after he was hurt.  This argument is founded on early voluntary abandonment cases such as *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451, and *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533—cases that have since been clarified by our recent decision in *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355.  *Baker* explained that the critical abandonment in evaluating TTC eligibility was abandonment of the entire work force, not simply abandonment of the former position of employment.  This did not occur here.  Other cases cited by David's Cemetery, such as *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469; *State ex rel. McClain v. Indus. Comm.* (2000), 89 Ohio St.3d 407, 732 N.E.2d 383; and *State ex rel. Smith v. Superior's Brand Meats* (1996), 76 Ohio St.3d 408, 667 N.E.2d 1217, are not dispositive, because they deal with employment discharge, not a voluntary quit.

{¶ 19} David's Cemetery also suggests that claimant's intermittent employment from December 21, 1997 through July 7, 1998, precludes TTC thereafter.  This is incorrect.  Claimant's employment, even if sporadic, indeed bars TTC over the period in which he was employed.  *State ex rel. Blabac v. Indus. Comm.* (1999), 87 Ohio St.3d 113, 717 N.E.2d 336.  It does not, however, foreclose TTC should claimant again become temporarily and totally disabled, which clearly

6

occurred during claimant's post-surgical recovery. *State ex rel. Bing v. Indus. Comm.* (1991), 61 Ohio St.3d 424, 575 N.E.2d 177.

{¶ 20} For the reasons cited above, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Pickrel, Schaeffer & Ebeling, David C. Korte* and *Michelle D. Bach*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Stephen D. Plymale*, Assistant Attorney General, for appellee Industrial Commission.

*Hochman & Roach Co., L.P.A., Gary D. Plunkett* and *Roger A. Lee,* for appellee Byrge.

————————————