DECISION
Relator, Ronald J. Hammer, Sr., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for temporary total disability compensation due to relator's termination from his employment, and to issue an order requiring the commission to find that an employee's termination from employment does not bar receipt of future payments of temporary total disability compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
In his objections, relator contends that, based on State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, he is entitled to temporary total disability compensation because he did not abandon the entire work force. We disagree.
Relator sustained a work-related injury on January 17, 2001, and returned to work on January 20, 2001. On April 4, 2001, relator was terminated from his employment with respondent, Continental Secret Service Bureau, Inc., for violation of written work rule prohibiting inappropriate comments and gestures towards women. In August 2001, a staff hearing officer allowed relator's motion for an additional condition but denied temporary total disability compensation in reliance on State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. The commission refused a further appeal.
In Baker, the Ohio Supreme Court held, at the syllabus:
 When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job. [Emphasis added.]
The court in Baker reasoned that, given the mobility of the current job market, an employee should not be forced to choose between accepting another, potentially better, position of employment or remaining with the employee's present employer in order to continue receiving temporary total disability compensation. We do not interpret Baker as being applicable where an employee has been fired for violating a written work rule.
Following Baker, the court decided State ex rel. McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559. The court stated, at 560-561:
 Voluntary abandonment of the former position of employment can, in some instances, bar TTC. State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, 378, 732 N.E.2d 355, 357. Firing "can constitute a voluntary abandonment of the former position of employment * * * [when it is] a consequence of behavior that the claimant willingly undertook." State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204. That is because a person is deemed to "tacitly accept the consequences of [one's] voluntary acts." State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535.
In McKnabb, the Ohio Supreme Court cited Louisiana-Pacific for the proposition that to bar receipt of temporary total disability compensation, an employee must have violated a written work rule. The court affirmed this court's decision that ordered payment for temporary total disability compensation because McKnabb's employer had failed to present evidence of such a written rule and not, as relator argues, because he had not abandoned the entire work force.
Likewise, in State ex rel. David's Cemetery v. Indus. Comm. (2001),92 Ohio St.3d 498, 502, the court explained its holding in Baker:
 * * * Baker explained that the critical abandonment in evaluating TTC eligibility was abandonment of the entire work force, not simply abandonment of the former position of employment. This did not occur here. Other cases cited by David's Cemetery, such as State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, 650 N.E.2d 469; State ex rel. McClain v. Indus. Comm. (2000), 89 Ohio St.3d 407, 732 N.E.2d 383; and State ex rel. Smith v. Superior's Brand Meats (1996), 76 Ohio St.3d 408, 667 N.E.2d 1217, are not dispositive, because they deal with employment discharge, not a voluntary quit. [Emphasis added.]
Last, in State ex rel. Kitts v. Mancan, Inc. (2002), 94 Ohio St.3d 245, the Ohio Supreme Court affirmed, without comment, this court's decision upholding a denial of temporary total disability compensation, where the employee was fired for violating a written work rule relating to drug testing.
The purpose of temporary total disability compensation is to compensate an injured employee for loss of earnings incurred while the injury heals. State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42. We find it consistent with the purpose of temporary total disability compensation, as well as the court's holding and policy expressed in Baker, to conclude that an employee who, through his own voluntary actions, violates a written work rule and is terminated is considered to have voluntarily abandoned the work force and such an employee is precluded from receiving temporary total disability compensation, regardless of whether the injured employee obtains another job. It is the employee's actions which led to his termination that precludes the receipt of earnings, not the job-related injury.
Therefore, upon a review of the magistrate's decision and an independent review of the file, this court adopts the magistrate's decision as its own and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
LAZARUS and HARSHA, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
 APPENDIX A IN MANDAMUS
Relator, Robert J. Hammer, Sr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation due to relator's termination from his employment and ordering the commission to find that an employee's termination from employment does not constitute grounds for denying the payment of future TTD compensation.
Findings of Fact:
1. Relator sustained a work-related injury on January 17, 2001, and his claim was originally allowed for "sprain left shoulder/arm, not otherwise specified."
2. Relator was released to return to work on January 20, 2001.
3. Relator returned to work on January 20, 2001, and continued working until March 29, 2001.
4. On April 4, 2001, relator was terminated from his employment due to improper conduct involving inappropriate comments and gestures directed towards females, which was in violation of a written work rule.
5. On April 10, 2001, relator underwent an MRI, which revealed a full thickness rotator cuff tear.
6. Relator was seen by Dr. Nabil Ebraheim who certified that relator was unable to work. Dr. Ebraheim performed surgery on relator's shoulder on May 11, 2001.
7. Relator filed a motion asking that his claim be additionally allowed for rotator cuff tear left shoulder and TTD compensation.
8. By order mailed May 24, 2001, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") additionally allowed relator's claim for rotator cuff tear left shoulder and granted TTD compensation from January 18, 2001 through January 19, 2001, May 11, 2001 through May 15, 2001, and from May 16, 2001 and continuing based on medical evidence.
9. The employer appealed the order from the BWC and the matter was heard before a district hearing officer ("DHO") on July 19, 2001. The DHO agreed that relator's claim be additionally allowed for rotator cuff tear left shoulder; however, TTD compensation was denied as follows:
 Temporary total from 1/18/2001 to 01/19/2001 is denied, as claimant has not missed 7 days.
 Temporary total is denied from 04/04/2001, claimant's term-ination date for violation of a written work policy, forward, pursuant to the Louisiana Pacific decision. Termination from a job for violating a written company policy is a bar to future temporary total.
10. Relator appealed from the DHO order and the matter was heard before a staff hearing officer ("SHO") on August 30, 2001. The SHO agreed that relator's claim should be additionally allowed for rotator cuff tear, left shoulder; however, the SHO modified the prior DHO order and denied relator's request for TTD compensation as follows:
 The facts reveal that the claimant was employed as a security guard with the instant employer. He received a verbal warning dated 03/23/2000 for "improper conduct" involving in-appropriate sexually oriented comments regarding females. Claimant was terminated on 04/04/2001 for "improper conduct" once again involving inappropriate comments and gestures directed toward a female.
 Claimant requests payment of temporary total disability compensation from 04/18/2001, date first seen by Doctor Ebraheim, forward based upon the newly diagnosed rotator cuff tear, left, and authorized surgery performed on 05/11/2001.
 This Staff Hearing Officer finds that the Louiaiana-Pacific [sic] doctrine precludes payment of temporary total disability compensation based upon the above facts. The claimant was terminated for violation of a written work rule. Claimant was aware that violation of said work rule would lead to termination. Pursuant to the "voluntary abandonment" doctrine espoused in Louisiana-Pacific and its progeny, claimant is not entitled to temporary total disability compensation.
 Therefore, it is the order of this Staff Hearing Officer to DENY claimant's request for temporary total disability.
11. Further appeal was refused by order of the commission mailed October 6, 2001.
12. Thereafter, relator brought the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The substance of relator's argument is his assertion that the Ohio Supreme Court has redefined the standard for awarding TTD compensation so that the focus of the commission and the courts is no longer on the conduct of the employee, but is exclusively on whether or not the employee is disabled as a result of the allowed conditions. Relator contends that termination from one's employment due to the violation of a written work policy no longer constitutes grounds for denying an employee TTD compensation. Relator maintains that, pursuant to State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376 ("Baker II"), and the cases which have followed, that the only time an employee would be denied TTD compensation is if they voluntarily and permanently leave the entire workforce, whether through retirement or following a discharge. Relator is correct in asserting that the Ohio Supreme Court has redefined the standard for payment of TTD compensation to a certain extent; however, relator is incorrect in asserting that logic now dictates that an employee who is terminated from his employment due to the violation of a written work policy is now entitled to TTD compensation provided that the employee can demonstrate that the allowed conditions are now preventing him from being able to work.
TTD compensation awarded pursuant to R.C. 4123.56 has always been defined as compensation for wages lost or a claimant's injury prevents a return to the former position of employment. State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to his or her former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own action rather than the injury that precludes return to the former position. See State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145. When determining whether an injury qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his or her former position of employment. See State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of temporary total disability. State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation.
A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which claimant willingly undertook. See State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. The rationale for this is that a person is deemed to tacitly accept the consequences of their voluntary acts.
In State ex rel. Baker v. Indus. Comm. (2000), 87 Ohio St.3d 561
("Baker I"), the court cited State ex rel. McGraw v. Indus. Comm. (1990), 56 Ohio St.3d 137, for the proposition that a claimant who chooses to leave his or her former position of employment for reasons unrelated to the industrial injury forfeits their eligibility for TTD compensation. At that time, both voluntary retirement as well as the decision to leave for another job constituted grounds for denial of further TTD compensation.
However, the court reconsidered its holding in Baker I and ultimately held as follows in Baker II, syllabus:
 When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job.
Following Baker II, claimants who sustained a work-related injury and then left that position of employment for another job, could receive TTD compensation provided that they were again disabled as a result of the allowed conditions. The court specifically found that "changing jobs is clearly distinguishable from some other situations of voluntary abandonment of employment and that a job change does not preclude a claimant from TTD." Id. at 381.
Relator contends that, following Baker II, the court has directed the commission's focus away from the claimant's actions and has placed the focus solely on the question of whether the allowed conditions are currently preventing the employee from returning to work. As such, relator contends that the commission abused its discretion by relying on State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. In Louisiana-Pacific, the claimant failed to report for work on three consecutive days without calling. He was dismissed pursuant to a written plant policy. When asked to characterize, for purposes of TTD compensation, the departure as voluntary or involuntary, the court noted as follows:
 Examining the present facts, we find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts — i.e., that an employee must be pre-sumed to intend the consequences of his or her voluntary acts. [Id. at 403.]
In the present case, the commission cited Louisiana-Pacific in its order denying relator's TTD compensation.
Relator's premise is that Baker II should be extended to include the payment of TTD compensation to a claimant who was fired for violating a written work rule provided claimant can show they are now disabled from working based on the allowed conditions.
Relator cites the following paragraph from State ex rel. Staton v. Indus. Comm. (2001), 91 Ohio St.3d 407, in support of his argument:
 For years, voluntary departure from employment was the end of the story, and harsh results sometimes followed. Claimants who left the former position of employment for a better job forfeited TTD eligibility forever after. In response, State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, * * * declared that voluntary departure to another job no longer barred TTD. It retained, however, the prohibition against TTD to claimant's who voluntarily abandoned the entire labor market. Thus, the claimant who vacates the work force for non-injury reasons not related to the allowed condition and who later alleges an inability to return to the former position of employment cannot get TTD. This, of course, makes sense. One cannot credibly allege the loss of wages for which TTD is meant to compensate when the practical possibility of employment no longer exists. [Id. at 410; Emphasis sic.]
However, in Staton, the court upheld the commission's order denying the claimant TTD compensation on the basis that claimant had retired from his employment for medical reasons which were unrelated to the allowed conditions in the claim. Relator focuses on the language above for the assertion that TTD compensation can only be denied where a claimant has abandoned the entire labor market.
Relator also cites State ex rel. David's Cemetery v. Indus. Comm. (2001), 92 Ohio St.3d 498, and State ex rel. Schack v. Indus. Comm. (2001), 93 Ohio St.3d 247, in support of his argument. In David's Cemetery, the claimant sustained a work-related injury. Four days after the injury, the claimant voluntarily quit his job and eventually took other employment. The commission made an award of TTD compensation and the employer challenged the commission's order. Part of the employer's argument was based on the fact that the claimant had voluntarily quit his position of employment. In this regard, the court stated as follows:
 * * * Its first argument focuses on the fact that claimant quit his job at David's Cemetery after he was hurt. This argument is founded on early voluntary abandonment cases such as State ex rel. Jones 
Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145, * * * and State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, * * *--cases that have since been clarified by our recent decision in State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376 * * *. Baker explained that the critical abandonment in evaluating TTC eligibility was abandonment of the entire work force, not simply abandon-ment of the former position of employment. This did not occur here. Other cases cited by David's Cemetery, such as State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401 * * *; State ex rel. McClain v. Indus. Comm. (2000), 89 Ohio St.3d 407 * * *; and State ex rel. Smith v. Superior's Brand Meats (1996), 76 Ohio St.3d 408, * * * are not dispositive, because they deal with employment discharge, not a voluntary quit. [Id. at 501-502.]
As is clear from the above paragraph, the Ohio Supreme Court itself has stated that the situation where an employee quits his job is distinguished from the situation where an employee has been discharged. Further, by its own language, the court has indicated that Louisiana-Pacific, State ex rel. McClain v. Indus. Comm. (2000),89 Ohio St.3d 407, and State ex rel. Smith v. Superior's Brand Meats, Inc. (1996), 76 Ohio St.3d 408, are still viable and are distinguished because they deal with employment discharge and not a voluntary quit.
In Schack, the claimant sustained a work-related injury and then later left that employment pursuant to a negotiated settlement agreement. The claimant later took another job and then moved for TTD compensation, alleging that he was no longer able to do that job because of his industrial injury. The commission had argued that Baker II does not apply because it was not other employment that motivated the claimant to quit his job. On the other hand, the claimant argued that, so long as his decision to leave his former position of employment was followed by another job, as opposed to abandonment of the entire labor market, then Baker, II controls. The court agreed and stated that Baker II returns the focus of analysis to the disabling affects of a claimant's injury rather than upon a claimant's decision to leave the job at which he or she was injured. However, the Schack decision does not address the issue of whether an employee who is discharged pursuant to the violation of written work policy is still eligible for TTD compensation.
None of the cases relied on by relator deal with the discharge of an employee from the former position of employment and the effects of that discharge on the employee's eligibility for TTD compensation. However, the court has addressed this issue since Baker II. In State ex rel. McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559, the employee was allegedly fired for tardiness. Pursuant to Louisiana-Pacific, the commission denied the claimant TTD compensation. However, because the employer had not produced a written work policy, the Ohio Supreme Court concluded that the reference in Louisiana-Pacific to a written work rule or policy was necessary if an employer was attempting to show that an employee should be barred from receiving TTD compensation because that employee had been discharged from his employment. The court did not overrule Louisiana-Pacific in either Baker II or in McKnabb; however, in McKnabb the court did state that a written policy was a prerequisite to precluding TTD compensation as required by Louisiana-Pacific.
Further, in State ex rel. Kitts v. Mancan, Inc. (2002),94 Ohio St.3d 245, the Ohio Supreme Court upheld an order of the commission denying TTD compensation to a claimant who had been terminated after refusing to submit to a drug test following an injury at work. The commission had specifically relied upon Louisiana-Pacific to deny the claimant TTD compensation. This decision was upheld by the Ohio Supreme Court and the Kitts case followed the decision in Baker II. Obviously, the Ohio Supreme Court has not changed its position and still holds that, where an employee violates a written work rule and is terminated from his employment for that reason, his departure from his employment is considered voluntary and, even if he later takes other employment, he is barred from receiving future TTD compensation by virtue of the discharge from employment. Logic does not dictate that this court extend the rationale from Baker II to the facts in the present case.
Based upon the foregoing, relator has not demonstrated that the commission abused its discretion in denying his application for TTD compensation and this court should deny his request for a writ of mandamus.