THE STATE EX REL. SMITH, APPELLANT, *v.* SUPERIOR'S
BRAND MEATS, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Smith v. Superior's Brand
Meats, Inc.* (1996), 76 Ohio St.3d 408.]

(No. 94–1758—Submitted May 7, 1996—Decided August 21, 1996.)

*Brian & Brian* and *Richard F. Brian,* for appellant.

*Buckingham, Doolittle & Burroughs, Brett L. Miller* and *Eleanor J. Tschugunov,* for appellee Superior's Brand Meats, Inc.

*Betty D. Montgomery*, Attorney General, and *Charles Zamora*, Assistant Attorney General, for appellee Industrial Commission.

---

*Per Curiam.* This controversy presents another variation on a recurrent theme—a claimant's eligibility for temporary total disability compensation when claimant no longer works at the job at which he or she was hurt. The relevance of employment separation to temporary total disability compensation eligibility has its roots in *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus, which defined "temporary total disability" as "a disability which *prevents* a worker from returning to his former position of employment." (Emphasis added.) This description prompted the later declaration that an industrial injury "must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it also must prevent him from returning to that position." *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 147, 29 OBR 162, 163, 504 N.E.2d 451, 453. *Jones & Laughlin* accordingly held:

"A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position, as well as voluntary retirement." *Id.* at 147, 29 OBR at 164, 504 N.E.2d at 454.

*Jones & Laughlin* was approved in *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535, which stated:

"The crux of this decision [*Jones & Laughlin*] was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals."

*State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678, clarified that only voluntary abandonment barred temporary total disability compensation. The nature of departure has remained the pivotal question since then.

Delineating between voluntary and involuntary can be confusing, since the natural inclination to characterize departure by the party who initiated it does not always work. For example, an employee-initiated separation is considered involuntary if the decision to leave was injury-induced. *Rockwell.* Conversely, an employer may fire a claimant, yet successfully assert a voluntary departure under the theory that the termination resulted from misconduct that the claimant voluntarily undertook. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202.

Claimant argues that his departure was employer-induced and hence involuntary. He asserts that the misconduct which the commission found transformed the separation into a voluntary one was never proven. As such, it could not have formed the basis for claimant's departure. We disagree.

At the outset, we recognize the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists.

In this case, the commission suggests that the nature of the offense and claimant's actions corroborated the accusation of wrongdoing. The incident giving rise to claimant's resignation was not an isolated one. Instead, it was part of a documented pattern of irregularity in claimant's time cards. Claimant never denied that his cards had been falsified. He apparently denied to the employer that he did it, but could offer no credible alternative explanation for the repeated irregularities. Claimant also never seriously challenged the grounds for his termination which, as a union member, he could have done through the grievance process. While claimant alleges that he completed a grievance form, he did not produce any record of that document, had no knowledge if the grievance procedure was ever commenced, and admitted that he never pursued the matter further. Viewed cumulatively, this constitutes "some evidence" upon which the commission could conclude that the claimant committed the misconduct alleged, despite the lack of a formal adjudication thereof. We therefore find no abuse of discretion in the commission's determining that claimant's departure was "voluntary" and that this abandonment barred temporary total disability compensation.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

DOUGLAS, J., concurring in judgment only. I concur in the judgment of the majority. I write separately only to point out that the majority's citation to *State*

*ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202, does not support the proposition for which *Schottenstein* is cited. Specifically, the majority says that "[c]onversely, an employer may fire a claimant, yet successfully assert a voluntary departure under the theory that the termination resulted from misconduct that the claimant voluntarily undertook. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202." However, *Schottenstein* is a case involving R.C. 4123.56(B) wage loss compensation, and firing has no bearing on a determination of wage loss eligibility. See *State ex rel. McGonegle v. Indus. Comm.* (1996), 76 Ohio St.3d 272, 667 N.E.2d 392.

RESNICK, J., concurs in the foregoing concurring opinion.