DECISION
Relator, John Daniels, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order in which it denied temporary total disability ("TTD") compensation on the grounds that relator voluntarily abandoned his former position of employment with respondent Industrial Powder Coatings ("IPC") when he violated a written work rule, and to issue an order granting such compensation.
This matter was referred to a court-appointed magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and has recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
Relator essentially raises the same arguments previously raised before the magistrate. The central issue is whether relator knowingly violated a written work rule. We agree with the magistrate that the commission had some evidence to support its decision that relator did, in fact, violate the written attendance rule by failing to show up for work after March 9, 2000, without providing a valid excuse indicating the reason for his inability to work. Although relator complains that the work rule calls for immediate termination and IPC waited five months to terminate him after his violation of the rule, we find this lag to be inconsequential. Further, relator's argument that he could not submit any additional medical excuses from doctors because he was denied medical care while IPC was contesting the claim is contradicted by the fact that he was able to obtain a May 8, 2000 C-9 from his physician. Thus, the magistrate did not err, and the commission had some evidence to support its finding that relator voluntarily abandoned his employment.
After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
DESHLER and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, John Daniels, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation on the basis that relator voluntarily abandoned his work with respondent Industrial Powder Coatings ("employer") when he violated a written work rule and ordering the commission to find that he is entitled to TTD compensation.
Findings of Fact:
1. In late 1999, relator began experiencing problems with his right and left hands and sought treatment after approximately two months of discomfort. Relator continued in his work as a sleever until January 21, 2000.
2. Relator filed a workers' compensation claim for carpal tunnel syndrome which had been diagnosed by an EMG test on January 31, 2000. The first report of occupational injury or disease ("FROI-1") was filed with the employer on February 23, 2000.
3. Relator's treating physician, Dr. Michael J. Felter, opined that relator could return to work on March 9, 2000, provided that he had restrictions including no repetitive lifting with his right arm.
4. The employer challenged the allowance of the claim and, as a result, did not offer relator light duty work within his medical restrictions.
5. Relator did not report to work after March 9, 2000, and did not provide the employer with any other statements from Dr. Felter or another physician indicating further disability or inability to return to work after March 9, 2000.
6. The employer terminated relator because he violated a written work rule which provided that the failure to show up for work for any reason unless such failure is excused pursuant to the terms and conditions of these rules, regulations or procedures is grounds for immediate termination. Because relator failed to notify the employer that he would not be returning to work after March 9, 2000, the employer terminated relator.
7. Relator's FROI-1 application was ultimately granted by order of the commission dated March 7, 2000. The commission's order states, in pertinent part, as follows:
 The Staff Hearing Officer finds that the claimant developed an occupational disease while working as a sleever. The claimant's duties involved taking a plastic tube, putting soap on it, and pushing it around a spring. He used both hands to do this repetitive process.
 In accordance with the Hall China case, this claim is allowed against the employer with whom the claimant experienced his "last injurious exposure," Industrial Powder Castings. The claimant was hired as a full time employee on 12/21/99. He continued to work as a sleever for IPC until 01/21/00.
 The claimant's condition of "bilateral carpal tunnel syndrome was diagnosed by an EMG taken on 01/31/00. Therefore, the claimant's date of diagnosis is 01/31/00, and his claim is allowed for "bilateral carpal tunnel syndrome."
 All related medical bills are ordered to be paid in accordance with the IC/BWC guidelines.
 It is noted that the claimant has not requested payment of any compensation as of the date of this hearing.
8. After relator's claim was allowed, he filed a C-84 requesting the payment of TTD compensation on June 14, 2001. This C-84 was filed after relator had surgery, which had been approved and paid for by the employer.
9. Relator's application for TTD compensation was heard before a district hearing officer ("DHO") on July 31, 2001, and resulted in an order denying in part and granting in part the request. The DHO ordered that relator be paid TTD compensation from February 11, 2000 through March 9, 2000, based upon the February 21, 2000 medical report of Dr. Felter and the employer's failure to prove that it offered relator light duty employment within his restrictions. The DHO found that relator had failed to provide the employer with any further contemporaneous "off work" medical slips or reports, and that the employer terminated relator's employment for his failure to report to work on three occasions after the expiration of his medical leave excuse on March 9, 2000. Because the employer presented evidence of relator's December 20, 1999 signature acknowledging receipt of the employer's handbook, the DHO concluded that relator had voluntarily abandoned his employment and found that relator is barred from receiving TTD compensation after March 9, 2000.
10. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on September 10, 2001. The SHO found that TTD compensation should be paid from March 11, 2000 to March 9, 2000, but denied the request for TTD compensation subsequent to March 10, 2000, as follows:
 The employer has filed a copy of its work rules and the injured worker's signed acknowledgement of its receipt.
 Employer further filed a copy of the injured worker's termina-tion from employment for failing to call in on three consecutive occasions.
 Ms. Scheid testified credibly that the injured worker failed to keep employer notified of his mailing address or telephone.
 The Staff Hearing Officer finds that the injured worker's termination was an abandonment of employment within the meaning and for the purposes of State ex rel. Ashcraft v. Industrial Commission (1987), 34 O.S.3d 42, State ex rel. Louisiana Pacific Corp. v. Industrial Commission (1995), 72 O.S.3d 401 and State ex rel. McKnabb v. Industrial Commission (2001) 92 O.S.3d 559.
 The injured worker, therefore, is ineligible to receive temporary total disability compensation from the 3/10/2000 date of the injured worker's termination and thereafter.
 Temporary total disability compensation is awarded from 2/11/2000 to 3/09/2000 inclusive in reliance upon the 2/21/2000 report of attending physician Dr. Felter. Ms. Scheid admitted that employer declined to offer light work at the time because it was contesting the allowance of claim.
 Temporary total disability compensation subsequent to 3/10/2000 is DENIED.
11. Further appeal was refused by order of the commission mailed October 3, 2001.
12. Relator's request for reconsideration was denied by order of the commission mailed November 3, 2001.
13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation. State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118,121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written rule or policy which: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargable offense; and (3) was know or should have been known to the employee.
In State ex rel. McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559,561, the Ohio Supreme Court has recognized the "great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation." State ex rel. Smith v. Superior's Brand Meats, Inc. (1996), 76 Ohio St.3d 408. In McKnabb, the issue concerned Louisiana-Pacific's reference to a written work rule or policy. The court stated that written work rules do more than just define prohibited conduct; they set forth a standard of enforcement as well.
In the present case, relator concedes that he failed to provide the employer with any additional disability slips after March 9, 2000. However, relator contends that his failure to do so does not constitute grounds for the commission to deny him TTD compensation because the employer's work rule is ambiguous. Relator violated the following work rule:
 Violation of the following rules will not be permitted. Any employee who violates any of the following rules will be subject to IMMEDIATE TERMINATION.
* * *
 * * * Failure to show up for work for any reason including commitment to a second job unless such failure is excused pursuant to the terms and conditions of these rules, regulations or procedures.
Relator contends that because the failure to report for work can be excused, he did not know that he would be terminated. The employer contends that the above cited language refers to excuses such as an excuse from a doctor indicating that an employee cannot return to work for a certain period. The employer contends that during that time period the employee would not need to call off work everyday but would need something from a doctor indicating that the employee was not able to work.
In its order denying relator TTD compensation, the commission cited the applicable law, cited the written work rule, concluded that relator had been given a copy of the work rules and was aware that his failure to call into work could result in his immediate termination. The commission cited the evidence relied upon and provided a reasonable explanation for its decision. Because there is "some evidence" in the record to support the commission's determination, relator has not demonstrated that the commission abused its discretion. Contrary to relator's assertions, the work policy is not ambiguous. Unfortunately, relator failed to provide the employer with a note from his doctor indicating that he would be temporarily totally disabled beyond March 9, 2000, when it was apparent that the employer was refusing to offer relator work within his physical capabilities. Relator submitted an excuse covering the period through March 9, 2000. However, relator failed to notify the employer that he was still unable to work. The error was relator's and the consequences are unfortunate; however, relator has not demonstrated that the commission abused its discretion.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by denying him TTD compensation beyond March 9, 2000, and relator's request for a writ of mandamus should be denied.